(C. D. 1555)

W. J. BYRNES & CO. OF N. Y., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 5, 1953)

*Barnes, Richardson & Colburn* (*Edward N. Glad* and *James F. Donnelly* of counsel), for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *William J. Vitale*, special attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The subject of controversy in this case is a positive motion-picture film entitled "The Navigator," imported by

the Museum of Modern Art and entered by the plaintiff, who was the customhouse broker for the importer. The film was claimed on entry to be entitled to an exemption from duty as American goods returned under the provisions of paragraph 1615 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. The collector classified the merchandise as a positive film under the provisions of paragraph 1551, as modified by the trade agreement with Mexico, T. D. 50797, at the rate of ½ cent per linear foot, giving as the reason therefor that the claim for free entry was not perfected.

At the trial, counsel for the respective parties entered into the following oral stipulation:

MR. GLAD: * * * At this time I offer to stipulate that the Museum of Modern Art owns and at all times hereinafter mentioned owned two moving picture films made in the United States, not for commercial purposes, entitled "Navigator" and "A Fool There Was." I further offer to stipulate that the Museum of Modern Art exported the film "A Fool There Was" to England on December 17, 1949, under export manifest number A–20826, and exported the film "Navigator" to England on January 6, 1950, under export manifest number A–20945.

I further offer to stipulate that the film "A Fool There Was" was imported into the United States on Customs entry 342985 on February 2, 1950; that all the requirements for free entry under paragraph 1615 were met except that the Outward Manifest covering the film "Navigator" was filed on May 15, 1950, by mistake and certified to cover this importation. The film "A Fool There Was" was liquidated free of duty under paragraph 1615.

I offer to stipulate that the film "Navigator" was imported into the United States on Customs entry 325152 on October 16, 1950. All requirements for free entry under paragraph 1615 were met, except that the Outward Manifest could not be certified as it had already been certified for the importation of the film "A Fool There Was"; that before the Outward Manifest of the film "A Fool There Was" could be certified and substituted, the film "Navigator" was liquidated for duty under paragraph 1551.

MR. FITZGIBBON: The Government agrees to all those facts, and moves to dismiss the protest on the grounds that no cause of action has been shown.

\*       \*       \*       \*       \*       \*       \*

MR. FITZGIBBON: * * * it is agreed that the film that was sent out was returned..

\*       \*       \*       \*       \*       \*       \*

CHIEF JUDGE OLIVER: Is it a fact in the collector's office there is one manifest for a film which was never re-imported according to their records?

MR. FITZGIBBON: That is right.

The plaintiff contends that as the article is an American film returned to the United States, and as all the requirements of the regulations relative to the free entry of American goods returned were met, it is free of duty under paragraph 1615 of the Tariff Act of 1930, as amended by section 35, Customs Administrative Act of 1938, T. D. 49646. Counsel for the plaintiff points out that the Government

has agreed that the film "The Navigator" in question was the same film that was exported; that the evidence of outward shipment pertaining thereto was on file at the customhouse in connection with the importation of the film "A Fool There Was" (entry 342985); and that there is a manifest in the collector's office for a film which was not reimported.

Counsel for the Government stresses the fact that when the film "A Fool There Was" was returned to the United States, the importer certified that it had been exported under manifest number A–20945, the export manifest number which had been assigned to the film "The Navigator," and that such "entry was liquidated free as the collector of customs was satisfied that export manifest number A–20945 *covered one motion picture film*." [Italics not quoted.] (Government brief, page 3.) For that reason, the Government contends that the collector did not commit any error entitling the importer to relief, any mistake being due entirely to the carelessness of the importer, and, therefore, that the merchandise was properly assessed with duty.

Respecting the insistence by counsel for the Government that the collector is not responsible for the careless mistakes of the importer and that the Government is free from error, it is noted with interest that section 10.68 (*a*) of the Customs Manual directs that—

Upon return to the United States of articles described in section 10.68 of the regulations, which are covered by an application on customs Form 4455, *customs officers shall make a careful examination and comparison of the articles with the descriptive list * * *.* [Italics not quoted.]

Were the directive to customs officials carefully followed, it is apparent that the error respecting the record evidence of exportation as to the film "A Fool There Was" would have been discovered by the customs officials and the evidence of outward shipment rejected, and then the proper evidence of exportation would, of necessity, have been filed. We are of the opinion, therefore, that the customs officials were equally careless with the importer as to the earlier importation. In connection with the importation of the film "The Navigator," there appears to have been no mistake on behalf of the importer but only an honest endeavor to supply the proper record evidence of exportation known by the Government, as well as by the importer, to be on file at the customhouse.

Article 10.67 (*b*) of the Customs Regulations of 1943, as amended October 1948, provides that—

If it is shown to be impracticable to produce the certificate of exportation required by paragraph (*a*) (1), the collector may accept other satisfactory evidence of exportation.

In view of the regulations, in the opinion of the court, the more expeditious procedure, and the one l ess costly to the Government,

would be for the collector to have allowed · the substitution of the proper manifests, rather than to have liquidated the entry before the importer had an opportunity to rectify the errors made by both sides in the earlier entry.

The situation in the case at bar does not involve the failure of the importer to file the certificate of exportation, required by the regulations as a condition precedent to free entry, for the reason that the film in question was exported from and returned to the same port.

In the case of *Traders Service Corporation* v. *United States*, 9 Cust. Ct. 407, Abstract 47521, certain gear-cutting machinery was claimed entitled to free entry as American goods returned. The collector had assessed duty thereon at the appropriate rate because evidence of outward manifest had not been supplied prior to liquidation, although the goods had been reported to have been of American origin. After the expiration of the 90-day review period, the importer requested the collector at the port of New York to waive the evidence of exportation. A memorandum of the collector stated that his office, being satisfied that the merchandise was of domestic origin and that no drawback had been paid, would have acceded to this request if the protest had still been reviewable by his office, and indicated that he was willing to waive the evidence and would now waive it, if permitted.

Counsel for the Government, in that case, as well as in the case at bar, contended strenuously that the regulations of the Secretary of the Treasury are mandatory and have the force of law; and, therefore, since they were not complied with, the court is without power to grant any relief. In deciding in favor of the plaintiff and holding that the Government's contention was without merit, the court stated:

The entry papers showed that the importer filed a declaration of the foreign shipper and an affidavit of the owner but that the certificate of exportation was not filed. In view of *Stone* v. *United States* (7 Ct. Cust. Appls. 439, T. D. 37009) it was found that although the proof has been held to be mandatory under article 397, paragraphs 1, 2, and 3, the filing of the certificate of exportation under article 397 (a) (3) only becomes a condition precedent to free entry when the collector is not satisfied that the goods are of domestic origin, and that article 398, as amended, further liberalizes the regulations.

In the case of *J. L. Cox* v. *United States*, 56 Treas. Dec. 808, Abstract 9660, duty was assessed upon certain silver fox skins which were claimed to be American goods returned. At the trial, the identity of the goods as American goods returned was completely established. There, also, Government counsel objected that the regulations had not been complied with. The court noted that the goods had been exported from and imported through the port of Rouses Point, N. Y., and stated that—

\* \* \* such certificate is necessary only when the returned goods are entered at a port other than that from which they were exported.

The court found that the mandatory regulations had been complied with and that the identity of the imported goods with that exported had been fully established.

In the case of *Atlantic Coast Fisheries Corp.* v. *United States*, 60 Treas. Dec. 1238, Abstract 17176, according to the court's decision, three cases of smoked salmon were entered as American goods returned. The appraiser returned the merchandise as "believed to be of American manufacture." Because the importer failed to furnish a satisfactory record of outward shipment, duty was assessed at the appropriate rate. The collector noted in his letter of transmittal that the foreign shipper's certificate described the merchandise as frozen fish, while the official record of outward shipment described it as frozen haddock. The collector stated that except for the doubtful record of outward shipment the requirements for free entry had been complied with.

At that trial, the plaintiff fully established that the outward shipment of the merchandise, which was described as frozen haddock, was, in fact, smoked salmon. The testimony of the witness was substantiated by documentary proof, admitted in evidence, consisting of the bill of lading covering the outgoing shipment as smoked fish and not frozen haddock. The court held that inasmuch as the doubtful record of outward shipment was all that prevented the free entry of the merchandise the smoked salmon returned to the exporter thereof was entitled to free entry as American goods returned.

In view of the record before the court, it is clear that the film in question is fully entitled to entry without the payment of duty as American goods returned and that all of the mandatory regulations of the Secretary of the Treasury have been complied with. Motion of the Government counsel to dismiss is, therefore, denied, and judgment will be entered in favor of the plaintiff directing the collector to reliquidate entry 325152 and refund all duties taken upon the film "The Navigator."